# UNITED STATES DISTRICT COURT FOR THE
## NORTHERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| **AMERICAN FAMILY HOME INSURANCE COMPANY,** | ) |
| | ) |
| **Plaintiff,** | ) |
| | ) |
| **v.** | )   **Case No. 03-CV-0453-CVE-PJC** |
| | ) |
| **BALLERINA EDGEWATER MOBILE HOME PARK; et al.,** | ) |
| | ) |
| **Defendants.** | ) |

## OPINION AND ORDER

Now before the Court is the Motion for Summary Judgment (Dkt. # 51) filed by defendants Ballerina Edgewater Mobile Home Park ("Ballerina Edgewater"), Ron Richardson, Ballerina Sunrise, Inc., and Ballerina Mobile Home Country Clubs and Sales, Inc. and the cross-motion for summary judgment filed by plaintiff American Family Home Insurance Company ("American Family") (Dkt. # 58-2).

## I.

This case involves alleged contamination of the water for drinking and bathing in a mobile home park.  Several tenants of the mobile home park, who were named as defendants herein (the "Claimant Defendants"), brought suit in the District Court of Pawnee County, State of Oklahoma, claiming to have suffered bodily injury from the contamination discovered in June 2002.  They specifically allege that the water was "contaminated with Coliform organisms and fecal matter," and that Ballerina Edgewater attempted to hide or "conceal and alter the results of various inspections by the authorities through the use of bleach and other techniques."  Pl. Br., Dkt. # 52, Exs. 2 - 5. The tenants sued Ballerina Edgewater, its owners (defendant Ron Richardson and defendant

Ballerina Sunrise, Inc.), as well as Ballerina Mobile Home Country Clubs and Sales, Inc. (collectively referred to herein as the "Ballerina Defendants").

Ballerina Edgewater made a claim under an insurance policy, No. 070 BP860983000, issued to it by American Family.  The policy was effective from June 7, 2001 to June 7, 2002.  The policy provides, in relevant part:

A. COVERAGES

    1. Business Liability

        a.    We will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury", "property damage", "personal injury" or "advertising injury" to which this insurance applies.  We will have the right and duty to defend any "suit" seeking those damages.  We may at our discretion investigate any "occurrence" or offense and settle any claim or "suit" that may result. . . .

\* \* \*

B.    EXCLUSIONS

    1. Applicable to Business Liability Coverage -
      This insurance does not apply to:

\* \* \*

    f. Pollution

        (1)    "Bodily injury" or "property damage" arising out of the actual, alleged or threatened discharge, dispersal, seepage, migration, release or escape of pollutants:

            (a)    At or from any premises, site or location which is or was at any time owned or occupied by, or rented or loaned to, any insured;

\* \* \*

Pollutants means any solid, liquid, gaseous or thermal irritant or contaminant, including smoke, vapor, soot, fumes, acids,

2

> alkalis, chemicals and waste.  Waste includes materials to be recycled, reconditioned or reclaimed.
>
> * * *
>
> F.     LIABILITY AND MEDICAL EXPENSES DEFINITIONS
>
> * * *
>
> 3.     "Bodily injury" means physical:
>
>    a.     Injury;
>
>    b.     Sickness;
>
>    c.     Disease
>
> sustained by a person, and if arising out of a. through c. above, mental injury, humiliation, or death sustained by that person at any time.

Id., Ex. 1.

American Family agreed to provide Ballerina Edgewater a defense to the state court action while asserting a "reservation of rights to deny payments because some or all of the claims being made against you are not covered under the terms of your policy." Id., Ex. 6, at 2.  American Family asserts that it reserved its rights not only to deny coverage, but also to withdraw from the defense. American Family contends, in particular, that the pollution exclusion is an absolute bar to liability. In the course of the defense, attorneys for American Family obtained an environmental analysis of the water at the Ballerina Edgewater Mobile Home Park.  The analyst concluded that there is  "no evidence to indicate that the water wells have been impacted from leakage of sewage from the lagoons." Id., Ex. 8, at 4.

By contrast, the medical expert retained by the Claimant Defendants testified that the tenants were exposed to water that was contaminated with "[m]ost likely E. coli, fecal form of bacteria," which caused them to contract infections and diseases or to exacerbate other underlying diseases.

He also testified that they were exposed to water that was "grossly overchlorinated, not regulated, which means there was formation of compounds called trihalomethanes, which are carcinogenic, among other things," and that this exposure caused additional diseases. Id., Ex. 13, at 34:24 - 36:1. The Ballerina Defendants admit that Ballerina Edgewater put chlorine in the water, but they contend that they were "disinfecting" the water with chlorine, not polluting it.

American Family brought suit in this Court for a declaration that no coverage is afforded under the policy, including liability coverage and, thus, it has no duty to indemnify or defend any of the Ballerina Defendants from the claims of the Claimant Defendants asserted in Pawnee County. American Family specifically asserts that the claims asserted by the Claimant Defendants do not fall within the insuring agreement of the subject policy, are excluded from coverage under the policy, and some or all of the alleged injuries occurred outside the period of the policy.  Plaintiff also asserts that defendant Ballerina Mobile Home Country Clubs and Sales, Inc. is not an insured under the policy.

The Ballerina Defendants counterclaimed for breach of contract, breach of the duty of good faith and fair dealing, and declaratory relief.  Specifically, the Ballerina Defendants seek a declaration that the pollution exclusion in the policy is ambiguous and inapplicable to relieve American Family of its duty to defend and indemnify in the state court litigation, that American Family's reservation of rights is void, and that one or more American Family policies are applicable to those claims. The Ballerina Defendants move for summary judgment on the grounds that plaintiff has a duty to defend and indemnify Ballerina Edgewater in any suit seeking damages because of bodily injury to which the insurance applies under the American Family Home Insurance

Businessowners Policy, and they allege that plaintiff is not acting under a duty of diligence, good faith or conscientious fidelity to its insured by bringing this suit.

American Family cross-moves for summary judgment on every issue raised by defendants; yet, it maintains that the pollution exclusion is not the sole basis under the policy upon which coverage is precluded.  This leaves open the possibility that American Family may continue to maintain this suit if the Court grants summary judgment in favor of Ballerina Edgewater.  As to summary judgment based upon the pollution exclusion, the parties do not dispute any material fact; they simply dispute who is entitled to summary judgment based upon the applicable law.

## II.

Summary judgment pursuant to Fed. R. Civ. P. 56 is appropriate where there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law.  Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986); Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 250 (1986); Kendall v. Watkins, 998 F.2d 848, 850 (10th Cir. 1993).  The plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial.  Celotex, 477 U.S. at 317. "Summary judgment procedure is properly regarded not as a disfavored procedural shortcut, but rather as an integral part of the Federal Rules as a whole, which are designed 'to secure the just, speedy and inexpensive determination of every action.'"  Id. at 327.

"When the moving party has carried its burden under Rule 56(c), its opponent must do more than simply show that there is some metaphysical doubt as to the material facts. . . .  Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there

5

is no 'genuine issue for trial.'" <u>Matsushita Elec. Indus. Co. v. Zenith Radio Corp.</u>, 475 U.S. 574, 586-87 (1986) (citations omitted). "The mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the [trier of fact] could reasonably find for the plaintiff." <u>Anderson</u>, 477 U.S. at 252. In essence, the inquiry for the Court is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." <u>Id</u>. at 250. In its review, the Court construes the record in the light most favorable to the party opposing summary judgment. <u>Garratt v. Walker</u>, 164 F.3d 1249, 1251 (10th Cir. 1998).

### III.

Defendants argue that the pollution exclusion is ambiguous because it is not clear whether the policy definition of "pollutant" applies to the bacteria and chlorine in the park's water supply. Oklahoma law governs the interpretation of the policy because it was issued into the State of Oklahoma. Okla. Stat. tit. 36, § 3617. It is for the Court to determine as a matter of law whether the terms of an insurance policy are ambiguous. <u>Bituminous Cas. Corp. v. Cowen Constr., Inc.</u>, 55 P.3d 1030, 1033 (Okla. 2002). A policy term is ambiguous if it "is reasonably susceptible to more than one meaning." <u>Air Liquide America v. Continental Cas. Co.</u>, 217 F.3d 1272, 1276 (10th Cir. 2000) (citing <u>Max True Plastering Co. v. U.S. Fidelity and Guaranty Co.</u>, 912 P.2d 861, 869 (Okla. 1996)). "The test for ambiguity is applied from the standpoint of a reasonably prudent lay person, not from that of a lawyer." <u>Cranfill v. Aetna Life Ins. Co.</u>, 49 P.3d 703, 706 (Okla. 2002) (citing <u>Couch on Insurance</u> 3d § 21:14 (1995)). Ambiguity must be strictly construed against the insurer and in favor of coverage. <u>Spears v. Shelter Mut. Ins. Co.</u>, 73 P.3d 865, 868 (Okla. 2003) (citing <u>Max True Plastering</u>, 912 P.2d at 864)).

American Family relies on two Oklahoma cases to argue that the pollution exclusion approved for use in Oklahoma policies[1] is not ambiguous. In Kerr-McGee Corp. v. Admiral Ins. Co., 905 P.2d 760 (Okla. 1995), the Oklahoma Supreme Court determined that the 1971 version of the pollution exclusion was not ambiguous. The 1971 version provided that bodily injury or property damage resulting from pollution was not covered unless its release or escape was "sudden and accidental." Id. at 762. In 2002, the Oklahoma Supreme Court again addressed whether a pollution exclusion was ambiguous in the Bituminous decision. The case concerned interpretation of a "Total Pollution Exclusion,"[2] which excludes coverage for any bodily injury or property damage "arising out of the actual or alleged discharge, dispersal, release or escape of pollutants." Bituminous, 55 P.3d at 1031 n.1, 1034. Answering a certified question, the court held that the clause was not ambiguous or limited in its scope to "environmental pollution." Id. at 1035.

The definition of "pollution" in the Bituminous policy is the same as that in the policy at issue here; however, because the parties did not dispute the issue, the Bituminous court did not address whether the substance causing the injury (lead) was a pollutant. Id. at 1032 n.5, 1035 n.22. Here, by contrast, the parties dispute whether the fecal matter and chlorine were pollutants. Where parties dispute whether sewage or the like is a pollutant, courts are divided. See Claudia G.

---

[1] The Oklahoma Insurance Commission must approve any policy form used in the State of Oklahoma. Okla. Stat. tit. 36, § 3610. American Family asserts, and the Ballerina Defendants do not dispute, that the policy at issue in this litigation is a standard Insurance Services Office form.

[2] For an explanation of the differences between a total pollution exclusion and qualified or absolute exclusions, see Red Panther Chem. Co. v. Ins. Co. of the State of Pa., 43 F.3d 514, 518 n.3 (10th Cir. 1994). The exclusion at issue in this matter is similar to the total pollution exclusion at issue in Red Panther. The definition of "pollution" is identical to that in Red Panther.

Catalano, Annotation, <u>What Constitutes "Pollutant," "Contaminant," "Irritant," or "Waste" Within</u>

<u>Meaning of Absolute or Total Pollution Exclusion in Liability Insurance Policy</u>, 98 A.L.R.5th 193

(2000).

The Tenth Circuit has held, applying general principles of Mississippi contractual law, that

a total pollution exclusion clause was not unambiguous as a matter of law.  <u>Red Panther</u>, 43 F.3d at

519.  The key issue in that case was not whether the pesticide allegedly causing injury was a

pollutant; it was whether the word "escape" contained in the exclusion was meant to include the

expulsion of a container of pollutants from a moving vehicle.  <u>Id.</u> at 519.  However, after citing a

number of cases from several jurisdictions in which courts "have reached a variety of different and

often contradictory conclusions,"on the issue of ambiguity in a pollution exclusion clauses, the court

observed:

> Despite the lack of a universal rationale for the resolution of pollution
> exclusion insurance coverage cases, we believe several principles exist that will
> assist courts in resolving them.  This holds especially true when a district court is
> called upon to decide a case on summary judgment.  In the instant case, the district
> court appears to have concluded, if an exclusion has been found unambiguous in one
> context, it is unambiguous in all other contexts.  We think the correct inquiry is
> whether the insurance policy exclusion is unambiguous when applied to the facts and
> circumstances of the particular case.

<u>Id.</u> at 518-19.

The <u>Red Panther</u> court then cited, among other cases, <u>Minerva Enterprises, Inc. v.</u>

<u>Bituminous Cas. Co.</u>, 851 S.W.2d 403 (Ark. 1993), where tenants sued a mobile home park owner

after their septic tank backed up and flooded their residence, and the Arkansas Supreme Court held

that the pollution exclusion was ambiguous.  <u>Id.</u> at 406.  The <u>Minerva Enterprises</u> court reasoned

that the exclusion is intended to prevent "industrial" pollution that caused environmental damage.

<u>Id.</u>  Incidentally, the court remarked that chlorine would  not necessarily be a "pollutant" in the facts

8

of a particular case, e.g., where it allegedly caused "injury" to someone swimming in a public pool. See id. at 405.  Since the facts of Minerva Enterprises are very similar to those at issue here, and the definition of "pollutants" is identical, it would appear that the Tenth Circuit might agree that the pollution exclusion in the American Family policy is ambiguous under Oklahoma law.

However, the Tenth Circuit has also held, based upon the allegations of an underlying complaint, that sewage and effluent, including fecal coliform bacteria, residual chlorine and other chemicals and substances in amounts in excess of levels permitted by law, were "pollutants" under Colorado law, the Clean Water Act (33 U.S.C. §1362(6)), and within the meaning of the slightly broader language in the pollution exclusions of the comprehensive general insurance policies at issue in that case.  Blackhawk-Central City Sanitation Dist. v. American Guar. and Liab. Ins. Co., 214 F.3d 1183, 1189-90 (10th Cir. 2000). The policies in Blackhawk defined pollutants to include "toxic chemicals, liquids or gases; or waste material or other irritants or contaminants." Id. at 1189. Arguably, Blackhawk could be distinguished based upon the language of the particular statutes and policies at issue in that case.

Given the lack of clear precedent in Oklahoma or from the Tenth Circuit as to whether the contaminants here constitute "pollutants" under the policy language and applicable law, as well as conflicting authority from other jurisdictions, the Court finds that the pollution exclusion provision in the American Family policy is ambiguous.  Since the exclusion is ambiguous, the Ballerina Defendants can invoke the doctrine of "reasonable expectations."

> This doctrine evolved as an interpretive tool to aid courts in discerning the intention of the parties, [Max True Plastering Co., 912 P. 2d at 864], when the policy language is ambiguous or when an exclusion is "masked by technical or obscure language" or "hidden in a policy's provisions." Id. at 870.  Under the reasonable expectations doctrine, when construing an ambiguity or uncertainty in an insurance policy, the meaning of the language is not what the drafter intended it to mean, but what a

reasonable person in the position of the insured would have understood it to mean.
Id.

Spears, 73 P.3d at 868.

The policy terms which are key to a determination of the Ballerina Defendants' objectively reasonable expectations are "pollutants," "contaminant" and "waste." "Pollutants" is defined to include any "contaminant," including "chemicals and waste." Yet, the description of what "waste" includes ("materials to be recycled, reconditioned or reclaimed") is not necessarily helpful in determining the insured's objectively reasonable expectations as to whether "chemicals and waste" includes chlorine and/or human waste (sewage). The Court must determine the objectively reasonable expectations of the insured as a matter of law. See Max True, 912 P.2d at 869.[3] Since insurance contracts are contracts of adhesion, the Court strictly construes an insurance policy against the insurer and in favor of the insured. Spears, 73 P.3d at 868. However, the Court does not find that the pollution exclusion in the American Family policy is "masked by technical or obscure language" or "hidden in the policy's provisions." It has found that the language is ambiguous; thus, the key question is what a reasonable person in the position of the Ballerina Defendants would have understood the term "pollutants" to mean.

The Court finds that, based on the policy language quoted above, no reasonable person in the position of the Ballerina Defendants could have understood the term "pollutants" to exclude sewage and excessive amounts of chlorine. The term "waste" is reasonably understood to include

---

[3]     The Red Panther court instructed the district court to conduct a factual inquiry into the proper scope of the pollution exclusion clause before determining whether the insured's claim fell within the intended scope of the exclusion and policy. 43 F.3d at 519. Red Panther, however, was decided before Bituminous, Max True, and Spears. This Court finds that, under Oklahoma law, the Court is to interpret the policy as a matter of law, including application of the doctrine of "reasonable expectations."

human waste and the term "chemicals" to include chlorine.  Although words of inclusion in an insurance policy are to be liberally construed in favor of the insured and words of exclusion are to be strictly construed against the insurer, Cranfill, 49 P.2d at 706 (citation omitted), the words in the pollution exclusion provision of the American Family policy do not permit the expansive construction advocated by the Ballerina Defendants.

Accordingly, American Family has no duty to defend or indemnify the Ballerina Defendants in the underlying lawsuit brought by the Claimant Defendants.  This finding addresses the parties' requests for declaratory relief.  The Court now addresses the Ballerina Defendants' contractual and bad faith counterclaims.

## IV.

The duty to defend an insured under a liability insurance policy is a broader duty than is the duty to indemnify, but it is not unlimited.  First Bank of Turley v. Fid. & Deposit Ins. Co., 928 P.2d 298, 303 (Okla. 1996); see Midland Mortgage Co. v. U.S. Fid. and Guar. Co., 301 F.3d 1277, 1279 (10th Cir. 2002).  The duty to defend exists where the insurer ascertains facts "that give rise to the potential of liability under the policy."  First Bank of Turley, 928 P.2d at 303; see Midland Mortgage, 301 F.3d at 1280.  American Family agreed to defend Ballerina Edgewater in the state court suit brought by the Claimant Defendants, but it legitimately reserved its rights to deny coverage or to withdraw from the defense.  An insurer who disputes a demand for defense can "(1) seek declaratory relief that would define the insurer's rights and obligations; (2) defend the insured under a reservation of rights, or (3) refuse to take any action at the peril of being later found in breach of its duty to defend."  First Bank of Turley, 928 P.2d at 304-05.   American Family's

defense under a reservation of rights is not a breach of contract.  Nor does it show bad faith; if anything, American Family's willingness to assume the defense demonstrates good faith.

The Ballerina Defendants' contractual and bad faith claims, however, are primarily based on American Family's action in bringing this declaratory judgment action to determine the respective rights and obligations of the parties under the American Family policy.  The Ballerina Defendants reference, in particular, the expert report obtained by American Family's counsel, in which the expert concluded that the water at the mobile home park was not contaminated.  The Ballerina Defendants assume that American Family is obligated to defend because that finding is favorable to the insured and would mean that the pollution exclusion is not applicable because there is no "pollution."

Once an insurer undertakes the defense of a suit against its insured, the insurer must meet a "high standard of conduct." Magnum Foods, Inc. v. Cont'l Cas. Co., 36 F.3d 1491, 1498 (10th Cir. 1993).  "When an insurance company acts on behalf of its insured in the conduct of litigation . . . , it assumes a fiduciary relationship and is obligated to act in good faith in representing the interests of the insured." American Fid. & Cas. Co. v. All American Bus Lines, Inc., 179 F.2d 7, 9 (10th Cir. 1949).  The right of an insurer to control litigation carries with it the "correlative duty to exercise diligence, good faith, honest and conscientious fidelity to the common interest of the parties." Traders & Gen. Ins. Co. v. Rudco Oil & Gas, 129 F.2d 621, 627 (10th Cir. 1942).

The Court finds nothing in American Family's conduct to indicate bad faith.  Whether the allegations of the Claimant Defendants against Ballerina Edgewater are true[4] is irrelevant to whether

---

[4]      It appears from the docket sheet in Temple v. Richardson, CJ-02-106, District Court of Pawnee County, State of Oklahoma, that the underlying lawsuits have been consolidated, may have been settled, and none has gone to trial in state court.

the policy covers a claim by the Ballerina Defendants.  Consequently, American Family's alleged refusal to rely on its own expert's opinion as to whether the water at the mobile home park is contaminated is not evidence of bad faith.  Further, merely seeking a determination from this Court as to whether it is obligated to defend or indemnify is not bad faith.  "An action for declaratory relief is appropriate to resolve coverage disputes between the insurer and insured." First Bank of Turley, 928 P.2d at 304 n.23.

Under Oklahoma law, "an insurer has an implied duty to deal fairly and act in good faith with its insured." Christian v. American Home Assurance Co., 577 P.2d 899, 904 (Okla. 1977). Violation of this duty gives rise to an action in tort. Id.  "The essence of the tort of bad faith, as it is recognized in Oklahoma, is the *unreasonableness* of the insurer's actions." Conti v. Republic Underwriters Ins. Co., 782 P.2d 1357, 1360 (Okla. 1989) (emphasis in original).  "The insurer does not breach the duty of good faith by refusing to pay a claim or by litigating a dispute with its insured if there is a 'legitimate dispute' as to coverage or amount of the claim, and the insurer's position is 'reasonable and legitimate.'" Thompson v. Shelter Mut. Ins., 875 F.2d 1460, 1462 (10th Cir. 1989) (citing Manis v. Hartford Fire Ins. Co., 681 P.2d 760, 762 (Okla. 1984), and Christian, 577 P.2d at 903-04)).

> The essence of an action for breach of the duty of good faith and fair dealing "is the insurer's unreasonable, bad-faith conduct . . . and if there is conflicting evidence from which different inferences may be drawn regarding the reasonableness of insurer's conduct, then what is reasonable is always a question to be determined by the trier of fact by a consideration of the circumstances in each case.

Badillo v. Mid Century Ins. Co., Nos. 98136, 98138, 2005 WL 1458637, at *8 (Okla. June 21, 2005) (quoting McCorkle v. Great Atlantic Ins. Co., 637 P.2d 583, 587 (Okla. 1981)).  There is no such

conflicting evidence in the summary judgment record.  American Family is entitled to summary judgment on the Ballerina Defendants' bad faith and breach of contract claims.

**V.**

**IT IS THEREFORE ORDERED** that the Motion for Summary Judgment (Dkt. # 51) of defendants Ballerina Edgewater Mobile Home Park ("Ballerina Edgewater"), Ron Richardson, Ballerina Sunrise, Inc., and Ballerina Mobile Home Country Clubs and Sales, Inc. is hereby **denied**; the cross-motion for summary judgment of plaintiff American Family Home Insurance Company ("American Family") (Dkt. # 58-2) is hereby **granted.**  American Family is entitled to summary judgment on all claims asserted in this litigation, including its claims and the counterclaims of defendants.

**IT IS FURTHER ORDERED** that American Family is entitled to a declaration that it owes neither a duty of defense nor indemnity to the Ballerina Defendants for the claims and suit of the Claimant Defendants under the policy of insurance which it issued to defendant Ballerina Edgewater Mobile Home Park.

**DATED** this 17th day of August, 2005.

CLAIRE V. EAGAN, CHIEF JUDGE
UNITED STATES DISTRICT COURT